# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PIERRE WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 10-CV-1662 |
| ) | |
| SHAWN BASS, *et al.* ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Pierre White ("Plaintiff") is an inmate at Stateville Correctional Center ("Stateville"). He has filed a civil rights complaint pursuant to 42 U.S.C. ¶ 1983 claiming that Defendant correctional officials ("Defendants") were deliberately indifferent to the known risk of assault of Plaintiff by his cellmate and failed to provide adequate medical attention to Plaintiff. Before the Court is Defendants' motion [18], which seeks summary judgment on the ground that Plaintiff failed to exhaust the administrative grievance remedies available to him, as required under PLRA § 1997e(a), because (1) he skipped one or more steps in the grievance-filing process and (2) he did not include sufficient detail in his administrative grievances to support the allegations in the underlying complaint in this case. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion [18].

**I.     Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements [21, 35], as well as from the parties' briefing on the instant motion [19, 36, 37].[1]

On June 12, 2009, Plaintiff was placed in a Stateville segregation cell with inmate Willie White ("White") (presumably, no relation to Plaintiff). Plaintiff alleges that Defendants were aware that White was dangerous and ignored Plaintiff's repeated requests to be placed in another cell. On June 14, 2009, White assaulted Plaintiff, injuring him. Plaintiff also contends that Defendants failed to provide Plaintiff with medical care following the attack.

As discussed below, Plaintiff insists that he complained to his Stateville counselor about the incident, filed a grievance with the Stateville grievance officer, and appealed his grievance to the Administrative Review Board. Defendants dispute whether Plaintiff followed the proper course of action in filing and appealing his grievances, and argue that the Court should grant summary judgment against Plaintiff on the ground that he failed to exhaust his administrative remedies.

---

[1] Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See N.D. Ill. L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit has confirmed repeatedly that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995 (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.*, *Malec*, 191 F.R.D at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See N.D. Ill. L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec*, 91 F.R.D. at 584. The requirements for a response under L.R. 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). The Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does no more than negate its opponent's fact statement. In other words, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact, and the Court will disregard such facts. See, *e.g., Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To survive a motion for summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A mere showing that there is "some metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There must be more than a "mere existence of a scintilla of evidence in support of the [non-moving party's] position" that a jury could reasonably find in the non-moving party's favor. *Anderson*, 477 U.S. at 252. When the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the burden of establishing that the non-moving party has not presented any genuine issue of material fact. See *Celotex*, 477 U.S. at 323. The Court must then "construe the facts and draw all reasonable inferences in the light most favorable to a nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

**III.    Analysis**

    **A.    Whether Plaintiff Complied with the IDOC Grievance-Filing Procedure**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added); see also *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Thus, pursuant to the PLRA, a state prisoner filing a claim under 42 U.S.C. § 1983 must utilize the prison grievance system available to him. See *Dole*, 438 at 809. The PLRA's exhaustion requirement is intended to alert prison officials to any systemic, ongoing problems and provide them with an opportunity to take a corrective action to remedy the problem. See *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "Exhaustion is 'an affirmative defense that the defendants have the burden of pleading and proving.'" *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

"[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The Illinois Department of Corrections ("IDOC") provides a three-step grievance-filing procedure. See *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002); *Dole*, 438 F.3d at 807. The first procedural step is to complain informally to the prisoner's counselor. Ill. Admin. Code tit. 20, § 504.810(a); see also *Dole*, 438 F.3d at 807. Second, if taking this step does not resolve the issue, the prisoner "may file a written grievance on a grievance form * * * within 60 days * * *." Ill. Admin. Code tit. 20 § 504.810(a). The form must be addressed to the grievance officer. Ill. Admin. Code tit. 20 § 504.810(b). The grievance officer must review the grievance and submit a

recommendation to the warden, who then must make a final decision at the institutional level and inform the prisoner of that decision in writing within sixty days of receiving the grievance. Ill. Admin. Code tit. 20, § 504.830(d). Third and finally, a prisoner may appeal a warden's determination to the Director of IDOC. Ill. Admin. Code tit. 20, § 504.850(a). The Director refers appeals to the Administrative Review Board ("ARB"), which makes a recommendation to the Director. Ill. Admin. Code tit. 20, § 504.850(b). The Director makes the ultimate decision in the administrative appeals process. Ill. Admin. Code tit. 20, § 504.850(f).

Here, the parties disagree as to whether Plaintiff sufficiently complied with the IDOC grievance procedure. Defendants claim that they have reviewed the relevant records and determined that Plaintiff cannot satisfy the exhaustion requirement because he failed to follow all three steps of the procedure. Although their briefs are far from clear, Defendants appear to allege that Plaintiff did not satisfy either of the first two steps of the grievance procedure but instead mailed a grievance form directly to the ARB.

Plaintiff contends that he filed three sets of grievances based on three different complaints that stemmed from June 14 incident. First, on July 16, 2009, Plaintiff filed form "DOC 0046" (entitled "Offender's Grievance") to the grievance officer stating that he was improperly sanctioned for fighting with White when in fact he was acting only in self-defense. On September 2, 2009, Plaintiff received a response from the grievance officer on form "DOC 0047" (entitled "Grievance Officer's Report"), indicating that Plaintiff's grievance was "affirmed" and that the disciplinary report would be expunged from Plaintiff's inmate record.

Second, on August 6, 2009, Plaintiff claims to have filed a DOC 0046 grievance form with the grievance officer stating that Plaintiff had been denied medical care after the June 14 incident. On October 25, 2009, Plaintiff received a DOC 0047 form from the grievance officer

5

stating that Plaintiff's counselor had addressed the issue, that no further action was necessary, and that the grievance was therefore denied as moot. Plaintiff does not claim to have appealed this determination to the ARB.

Third, on July 26, 2009, Plaintiff submits that he completed a DOC 0046 grievance form asserting a "double-celling" complaint. The grievance states that Plaintiff "should not have had a cellmate thus putting me in a dangerous situation resulting in me being attacked * * *. This institution placed the griever in harm[']s way with knowledge that harm was almost sure to come to this griever. This was an act of deliberate indifference and is a violation of the United States Constitution under the Eight[h] amendment law." [6, at 21; 21-2, at 22.] Plaintiff claims that he submitted the form to his counselors, Ms. Harris and Ms. Rogers, as well as to the grievance officer. Plaintiff also states in an affidavit that he sent the form to the ARB on July 26, 2009.[2]

Plaintiff avers that he never received a response from the grievance officer regarding the double-celling grievance. On November 7, 2009, Plaintiff sent a letter to the ARB, attaching the July 26 DOC-0046 grievance form. Plaintiff's letter states:

> I am writing this letter as a last resort. I have been filing this same grievance since the date of July 26, 2009 with no response. I've talked to my counselor, Ms. Kimberly Rogers as well as sent it directly to the Grievance Officer Mr. Shaun Bass. I also right before I sent it to you sent an emergency grievance to the warden. I haven't gotten a response nor do I expect to get one due to the nature of this grievance. I have made plenty of copies, so I keep sending them in with a

---

[2] Defendants' argument in favor of summary judgment rests largely on Plaintiff's attestation, in a sworn affidavit that he attached to his complaint, that "on July 26, 2009, I had occasion to place into the Stateville Correction Center's mailing system one (1) Original document entitled "Committed Person's Grievance," Grievance Docket Number # 0046, to be mailed to the Administrative Review Board, P.O. Box 19277, Springfield, Illinois, with postage pre-paid, and by way of mailing through the United States Postal Service." [6, at 44; 21-2, at 45.] However, there are indications elsewhere in the record at summary judgment that Plaintiff submitted the July 26 grievance (or copies thereof) to his counselor(s) and the grievance office. [See 21-2, at 23.] Furthermore, ARB Chairperson Gina Allen, in a sworn affidavit that Defendants attached as an exhibit to their motion, avers that the ARB received a copy of Plaintiff's July 26 grievance on December 3, 2009. [See 21-2, at ¶ 7.] However, Ms. Allen's attestation does not fully square with the ARB response form included in the record. That form, which is signed by Ms. Allen, indicates that the ARB received Plaintiff's grievance appeal on November 12, 2009 and completed its review of the grievance on December 3, 2009. [See 21-2, at 26.]

letter attached to them with no response. I am seeking your help with this current situation. It cannot be resolved by me alone. Please can you look into what's going on.

[21-2, at 23]. On December 9, 2009, Plaintiff received a "Return of Grievance or Correspondence" form from the ARB, which was dated December 3. The response notes that the ARB received Plaintiff's grievance appeal on November 12, 2009. The response form checks two boxes under a heading that states "Additional information required": the first checked box states that Plaintiff must submit DOC 0047 (the Grievance Officer's Report form) and include the grievance officer's response to appeal; the second checked box states that Plaintiff must provide a copy of DOC 0046 (the Offender's Grievance form) with a response from the counselor. A handwritten notation at the bottom of the ARB response form states that "As your issue is at Sta[teville] you must gr[ie]ve at Sta[teville] 1st. If you wish to appeal that decision Read and Follow Department Rule 504-F and provide ARB w/ Both #1 and #2 [checked boxes] above within timeframes." [21-2, at 26.]

Plaintiff states that, on November 20, 2009 (after sending his letter with a copy of the July 26 grievance to the ARB but before receiving the ARB's response), he filed a separate DOC 0046 form to the grievance officer at Stateville reiterating the double-celling complaint and stating that he had not received a response to the July 26 grievance. On December 11, 2009, Plaintiff received a note from Counselor Rogers saying "I need to know what was your previous grievance and who you give it to." [21-2, at 31.] Plaintiff contends that he sent the July 26 grievance to his counselor, although it is unclear whether he did so after receiving the counselor's note. Plaintiff also contends that he sent a follow-up letter to the grievance officer on January 5 requesting an update on the status of the July 26 and November 20 grievances.

Plaintiff states that, in contrast to the handling of his disciplinary record and medical care grievances, he never received a DOC 0047 grievance officer response to his July 26 double-celling grievance or to his November 20 follow-up grievance. Indeed, the only responses that he claims to have received with respect to the double-celling complaint came from his counselor on December 11 and from the ARB on December 9, 2009, both of which requested additional information. Plaintiff does not state that he filed a subsequent appeal to the ARB. Nor does Plaintiff claim that he replied to the ARB's December communication with an explanation that he was unable to submit the requested additional information because he had not received a response from the grievance officer or a written response from his counselor on the DOC 0046 form. Instead, Plaintiff filed the instant complaint, claiming that he satisfied his duty to administratively exhaust his remedies that were available to him and that he cannot be penalized for the prison's failure to properly process his grievances.

A "prison official's failure to respond to a prisoner's claim can render administrative remedies unavailable." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (citing *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002)). The administrative grievance procedure may be deemed exhausted "when prison officials fail to respond to inmate grievances because those remedies ha[ve] become 'unavailable' * * *." *Id.* (quoting *Lewis*, 300 F.3d at 835). Thus, a prisoner fails to properly exhaust the grievance procedure when he does not take a necessary step, but he is not held accountable when he follows the proper procedures and prison officials mishandle the grievance. *Dole*, 438 F.3d at 811.

Defendants bear the burden to plead and prove the affirmative defense of failure to exhaust. See *Brengettcy*, 423 F.3d at 682. More importantly for purposes of this motion, it is Defendants' burden to establish that Plaintiff has not presented any genuine issue of material fact

to warrant a denial of summary judgment. See *Celotex*, 477 U.S. at 323. Defendant has not met its burden at this juncture. Indeed, the undisputed evidence in the record shows that Plaintiff complied with all three steps of the grievance procedure at some point. But a factual question remains as to whether Plaintiff followed the grievance procedure in the proper order; *i.e.*, did he first complain to his counselor, then file a DOC 0046 form to his grievance officer, and only *then* appeal to the ARB; or did he skip the second step and send the form directly to the ARB on July 26, only later sending copies or filing new double-celling grievances to the grievance officer? The record as presented to the Court could be read to support either reading.[3] Notably, Defendants do not provide an affidavit from any correctional officer at the prison or any other type of evidence to attempt to refute that the prison dropped the ball on Plaintiff's grievance. The Court therefore denies Defendants' motion for summary judgment insofar as it claims that Plaintiff failed to comply with the grievance-filing procedure.[4]

The Court further notes that when a case presents a question as to whether a prisoner has properly exhausted his administrative remedies pursuant to the PLRA, a court must reach a determination of that issue before disposing of the case on the merits. See *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb. 18, 2009) (holding that "[t]he issue of exhaustion of available administrative remedies is a threshold inquiry for the court"). The district judge must "conduct[] a hearing on exhaustion"

---

[3] Based on other evidence in the record, Plaintiff plainly knew how to follow the IDOC grievance procedure and had done so successfully with respect to his other complaints arising out of the June 14 incident. Although the Court cannot draw an inference as to whether Plaintiff's July 26 grievance complied with the requisite filing procedure based solely on the fact his compliance with the procedure in the past, the Court notes that it seems unlikely that Plaintiff would depart from what he knew to be proper protocol in filing the double-celling grievance.

[4] Neither party has directly addressed the legal question of whether a prisoner whose ARB appeal is returned to him because of a failure of the grievance officer or warden to respond to the prisoner's grievance at step two of the process may be deemed to have complied sufficiently with all three steps.

9

and "permit[] whatever discovery relating to exhaustion he deems appropriate" before reaching a determination as to whether the prisoner did in fact exhaust his or her available remedies. *Id.* "If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over." *Id.* "If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies." *Id.* It appears that a *Pavey* hearing may be required to resolve the exhaustion issue.

      **B.**      **Whether Plaintiff's Grievance Was Adequate**

Defendants also argue that summary judgment is warranted because Plaintiff's underlying grievance is insufficiently detailed. Specifically, Defendants contend that Plaintiff's grievance does not: (1) name or describe any of the Defendants; (2) describe the conduct or actions taken by any Defendant; (3) say when, where, or who was present when the violation occurred; or (4) make any allegations regarding denial of medical care or treatment (an allegation set forth in Plaintiff's complaint).

Under Illinois law, grievances "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individuals as possible." Ill. Admin. Code tit. 20, § 504.810(b).

Plaintiff's July 26 double-celling grievance includes details of his cellmate's assault on him. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that the grievance included sufficient detail to "give prison administrators an opportunity to address a shortcoming" as to double-celling. *Glick v. Walker*, 2010 WL 2775864, at *3 (7th Cir. Jul. 13, 2010). Defendants therefore cannot argue that they lacked sufficient information about the assault from the face of the double-celling complaint.

By contrast, the double-celling grievance does not describe or allude to any denial of medical care following the alleged assault. Thus, to the extent that Plaintiff's denial of medical care allegation in this case is based on the July 26, 2009 grievance, the grievance does not include sufficient information to support the allegation. As stated above, Plaintiff alleges that he filed a separate grievance on August 6, 2009, regarding denial of medical care, which the grievance office denied as moot. Plaintiff does not claim that he appealed that determination to the ARB, nor is there any evidence to that effect. Thus, to the extent that Plaintiff's denial of medical care allegation is based on the August 6, 2009 grievance, Plaintiff has failed to administratively exhaust his available remedies. See *Dole*, 438 F.3d at 807.

In sum, in regard to his inadequate medical care allegation, Plaintiff failed to properly start the grievance process on July 26 with an adequate description of his complaint, and failed to

properly finish the process through the grievance lodged on August 6. Either way, any claim based on failure to provide medical care could not proceed, and the Court therefore grants Defendants' motion for summary judgment to the extent that Plaintiff seeks to assert a denial of medical care claim.

**IV.     Conclusion**

For the reasons set forth above, the Court grants in part Defendants' motion [18] (as to the denial of medical care allegation) and denies in part the motion (as to the failure to exhaust the double-celling grievance). In a separate minute order, the Court will set this matter for a status hearing.

Dated: March 31, 2011

Robert M. Dow, Jr.
United States District Judge